[ARGUMENT NOT YET SCHEDULED]

**No. 15-5051**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

NATIONAL ASSOCIATION OF CRIMINAL DEFENSE LAWYERS,

*Appellant,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE EXECUTIVE OFFICE FOR UNITED STATES
ATTORNEYS and UNITED STATES DEPARTMENT OF JUSTICE,

*Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA (NO. 14-269 (CKK))

---

**REPLY BRIEF**

---

KERRI L. RUTTENBERG
 *Lead Counsel*
YAAKOV M. ROTH
JULIA FONG SHEKETOFF*
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC  20001
(202) 879-3939
*Counsel for Appellant*

*Admitted in New York
Supervised by member of D.C. bar

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................... ii

GLOSSARY ............................................................................................ iv

INTRODUCTION .....................................................................................1

ARGUMENT .............................................................................................4

    I.     THE COURT SHOULD REVIEW THE BLUE BOOK *IN CAMERA* ........................................................................................4

    II.    THE BLUE BOOK IS NOT EXEMPT AS WORK PRODUCT ........4

         A.     DOJ Concedes That The Blue Book Was Not Prepared With Any Specific Claim Or Particular Transaction In Mind .............................................................................................5

         B.     In Analyzing The Blue Book's Contents And Function In Light Of FOIA's Purposes, DOJ Ignores Its Representations To Congress .......................................................9

         C.     DOJ Agrees That The Blue Book Must Be Segregated Unless It Is *All* Work Product, And Much Of Its Content Plainly Is Not ...................................................................13

    III.   THE BLUE BOOK IS NOT PROTECTED BY EXEMPTION 7(E) ........................................................................................15

         A.     DOJ Cannot Deny That It Created The Blue Book To Regulate Its Prosecutors' On-The-Job Conduct, Not To Punish Wrongdoers .................................................................15

         B.     DOJ Fails To Explain How Disclosing The Blue Book Poses Any Risk Of Circumvention Of The Law ....................18

         C.     This Court Should Not Credit DOJ's Conclusory Assertion That Segregation Would Be Impossible Here .........22

CONCLUSION ........................................................................................23

CERTIFICATE OF COMPLIANCE ........................................................24

CERTIFICATE OF SERVICE ................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Immigration Council v. U.S. Dep't of Homeland Sec.,*
   905 F. Supp. 2d 206 (D.D.C. 2012)...............................................................9, 11

*Bristol-Meyers Co. v. FTC,*
   598 F.2d 18 (D.C. Cir. 1978)...........................................................................15

*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980).........................................................................6

*Ctr. for Auto Safety v. EPA,*
   731 F.2d 16 (D.C. Cir. 1984)...........................................................................13

*Cuneo v. Schlesinger,*
   484 F.2d 1086 (D.C. Cir. 1973)......................................................................22

*Delaney, Migdail & Young, Chartered v. IRS,*
   826 F.2d 124 (D.C. Cir. 1987).........................................................................8

*In re Sealed Case,*
   146 F.3d 881 (D.C. Cir. 1998).............................................................5, 6, 7, 8

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility,*
   284 F.3d 172 (D.C. Cir. 2002)...................................................................16, 18

*Jordan v. U.S. Dep't of Justice,*
   591 F.2d 753 (D.C. Cir. 1978) (en banc)........................................................11

*Judicial Watch, Inc. v. Dep't of Justice,*
   432 F.3d 366 (D.C. Cir. 2005).........................................................................4

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.,*
   926 F. Supp. 2d 121 (D.D.C. 2013).................................................................11

*Mayer Brown LLP v. IRS,*
   562 F.3d 1190 (D.C. Cir. 2009).......................................................................20

*  Authorities upon which we chiefly rely are marked with asterisks.

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007).........................................................................20

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975).........................................................................................12

*Pratt v. Webster*,
    673 F.2d 408 (D.C. Cir. 1982).......................................................................15

*\*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l*
    *Boundary & Water Comm'n, U.S.-Mexico*,
    740 F.3d 195 (D.C. Cir. 2014).......................................................................16

*Rural Hous. Alliance v. U.S. Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir.), *supplemented*, 511 F.2d 1347
    (D.C. Cir. 1974) ...............................................................................16, 17, 18

*Schiller v. NLRB*,
    964 F.2d 1205 (D.C. Cir. 1992)..........................................................4, 6, 7, 8, 13

*\*Senate of P.R. v. U.S. Dep't of Justice*,
    823 F.2d 574 (D.C. Cir. 1987)....................................................................7, 12, 15

*Shapiro v. U.S. Dep't of Justice*,
    969 F. Supp. 2d 18 (D.D.C. 2013).....................................................................5

*United States v. Hubbell*,
    530 U.S. 27 (2000)..........................................................................................21

## STATUTES

5 U.S.C. § 552 ...........................................................................................13, 15

28 U.S.C. § 2412 .............................................................................................8

# <u>GLOSSARY</u>

DOJ          Department of Justice

FOIA         Freedom of Information Act

JA__         Joint Appendix

NACDL        National Association for Criminal Defense Lawyers

# INTRODUCTION

**I.**    DOJ's principal basis for withholding the Blue Book from NACDL and the public is its claim that the Book is protected attorney work product under FOIA Exemption 5.  But, as NACDL has explained, none of the considerations bearing upon work-product analysis counsel in favor of extending the protections of that doctrine to the Blue Book.  As a general manual that directs prosecutors how to comply with their constitutional and statutory disclosure obligations in order to avoid fiascos like the Senator Stevens prosecution, the Blue Book is far closer to an ordinary agency manual—which presumptively must be disclosed—than to strategic advice within the narrow confines of the adversarial process.

DOJ responds that work-product protection is not limited to documents produced in the context of a "specific claim," contending that this Court has jettisoned that standard.  But DOJ misreads this Court's cases: They have relaxed the "specific claim" requirement only when the government is acting in a *defensive* posture rather than as prosecutor—and, even then, it has been refined into a "particular transaction" test, not eliminated altogether.  Here, DOJ created the Blue Book in its capacity as prosecutor and it does not relate even to a particular transaction, much less a specific claim.  The Blue Book is entirely general, lacking *any* concrete nexus to any specific existing or contemplated litigation and thus to the adversarial process; that alone defeats work-product protection.

Moreover, even if no specific claim or transaction were needed, it remains DOJ's burden to show that the Blue Book is work product in light of its function, its content, and FOIA's purposes. DOJ falls short. DOJ advised Congress that the Blue Book was created to protect the rights of *criminal defendants* by ensuring that prosecutors understood and abided by their obligations. That purpose has nothing to do with—indeed, is contrary to—the objective that matters to work-product doctrine, *i.e.*, DOJ prevailing in court in prosecutions against criminal defendants. And, assuming DOJ was truthful in its congressional testimony, the Book consists of educational policy materials to protect defendants, not tactical advice on how to best evade disclosure duties. In light of its function and contents—as well as the basic purposes of FOIA—work-product protection is inapposite here.

In all events, there is no basis to withhold the *entire* Blue Book, even if some parts of it veer into adversarial strategy. DOJ admits that segregation is necessary unless the entire Blue Book is protected as work product, and it surely is not; there is no dispute, after all, that the Book encompasses policy guidance, background on prosecutors' disclosure obligations, and other non-tactical materials. While DOJ seems at times to contend that anything written by lawyers on the broad subject of litigation is automatically work product, that is not the law. Otherwise, literally *anything* produced by DOJ could be shielded from public view. This case should therefore at minimum be remanded to analyze the segregability of the Blue Book.

**II.**   Nor can the Blue Book be withheld as a "law-enforcement" document whose disclosure would allow for circumvention of the law.  At the threshold, the Book is not addressed to detecting violations of law or to punishing wrongdoers, but rather to supervising DOJ employees, a matter that this Court has held falls outside the "law enforcement" boundaries of FOIA Exemption 7(E).  Moreover, DOJ does not dispute (at least for purposes of this appeal) that it must demonstrate at least a "logical" risk that disclosure of the Blue Book would lead to circumvention of the law.  Notwithstanding its blustery tone, however, DOJ utterly fails to show *any* such risk.  At worst, the Blue Book may alert defendants to weaknesses in DOJ's legal arguments on the subject of discovery.  That may give them a better chance of *prevailing* before a court in discovery disputes, either to withhold their own materials or to obtain discovery of DOJ's materials.  But that cannot be described as *circumvention* of law.  If the court holds that the defendant has the right to shield certain evidence or to see other evidence, that is *enforcement* of the law by the courts, not its *evasion* by the parties.

In all events, as with the work-product inquiry, there should be no doubt that Exemption 7(E) cannot immunize the *entire* Blue Book from disclosure.  Even if there were certain, as-yet-unidentified portions of the Book that do somehow risk circumvention of law if disclosed, DOJ's assertion that it cannot segregate those materials from a *nine-chapter volume* is simply not credible.  Remand is required.

3

## **ARGUMENT**

## **I.      THE COURT SHOULD REVIEW THE BLUE BOOK *IN CAMERA*.**

As a threshold matter, this Court should accept DOJ's offer to review the Blue Book *in camera*.  DOJ Br. 18 n.5.  Because of the nature of FOIA litigation, NACDL has not seen the Book, and therefore has relied in its briefs on DOJ's own representations to Congress and the district court about the Book's contents. Nonetheless, DOJ accuses NACDL of "badly mischaracteriz[ing]" the Book.  DOJ Br. 44.  Because of the parties' ongoing dispute about the contents of the Blue Book, and because the contents are relevant to both the work-product analysis and the 7(E) exemption, *see* NACDL Br. 17-18,  41-45; *infra* at 9-12, this Court should review the Blue Book itself.  That is what the district court did.  *See* JA 112-13 (court "requested that the Blue Book be provided for *in camera* review" because "parties' differing descriptions of the Blue Book's contents affect the applicability of Exemption 5 and 7(E)").  And that is also consistent with this Court's past practice.  *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 370 (D.C. Cir. 2005); *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992).

## **II.     THE BLUE BOOK IS NOT EXEMPT AS WORK PRODUCT.**

The Blue Book is not exempt from disclosure as attorney work product. DOJ's contrary arguments misread this Court's caselaw requiring a concrete nexus to specific litigation; give short shrift to the other factors that bear on the analysis; ignore FOIA's fundamental purposes; and lack any limiting principle.

4

## A.    DOJ Concedes That The Blue Book Was Not Prepared With Any Specific Claim Or Particular Transaction In Mind.

As NACDL has explained, because the work-product doctrine is designed to protect the *adversarial process*, a document must have a clear nexus to a specific existing or foreseeable adversarial litigation in order to trigger that doctrine.  That nexus helps distinguish documents created by the government acting as *sovereign* from those it creates acting as a *party to litigation*, and prevents Exemption 5 from swallowing FOIA by shielding any document written by any government lawyer relating to any matter that may in the future be a subject of litigation.  *See* NACDL Br. 15-16; *In re Sealed Case*, 146 F.3d 881, 885-86 (D.C. Cir. 1998).

Here, DOJ does not say that it wrote the Blue Book to address any *particular* litigation.  To the contrary, it concedes that the Book was "unconnected to specific claims or particular transactions" and that it contains "uniform" material relevant to "thousands of federal prosecutors who represent the United States in criminal cases brought against tens of thousands of federal defendants."   DOJ Br. 42-43.  That admission alone should decide this case: DOJ prepared the Blue Book not to win any particular or contemplated litigation, but to generally guide "thousands" of its employees carrying out their duties.  That "generalness" defeats work-product protection.  *Shapiro v. U.S. Dep't of Justice*, 969 F. Supp. 2d 18, 34 (D.D.C. 2013).  Far from invading the adversarial process, that type of general guidance is *exactly* the sort that FOIA requires to be transparent and publicly available.

DOJ argues, however, that the work-product doctrine does *not* require any nexus to particular litigation.  It claims that this Court, in *Sealed Case*, 146 F.3d at 885, and *Schiller*, 964 F.2d at 1208, "already rejected" the argument that such a nexus is necessary.  DOJ Br. 35-40.  But DOJ mischaracterizes those cases.

*Sealed Case* is the Court's most recent word on the issue.  It confessed to an apparent "inconsisten[cy]" in prior decisions, but sought to reconcile those earlier cases and clarify the legal rule.  146 F.3d at 885.  It explained that while certain past opinions had employed a specific-claim requirement and others (like *Schiller*) had not, the difference was attributable to the *government's role* in the litigation. *See id*. ("Properly read, however, these cases are not in conflict.").  Specifically, where government lawyers act *offensively* as "prosecutors or investigators of suspected wrongdoers," the work-product privilege had been limited to documents created with a specific claim in mind. *Id*. (citing, *e.g.*, *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)).  By contrast, where government lawyers act *defensively* to protect agency clients "from future litigation about a particular transaction," the specific-claim test had been only "one factor" in the analysis, not dispositive. *Id.* at 885-87 (citing, *e.g.*, *Schiller*, 964 F.2d at 1208). In either scenario, the work must bear a clear connection to anticipated litigation with some degree of particularity.  Absent that, the doctrine would improperly sweep in even general agency policy guidance concerning litigable matters.

6

Here, unlike *Schiller*, DOJ created the Blue Book in an *offensive* posture—to address the conduct of "prosecutors … of suspected wrongdoers." *Sealed Case*, 146 F.3d at 885. Thus, under *Sealed Case*'s reading of prior cases like *Coastal States*, a "specific claim" *is* required to invoke work-product privilege. (And, again, DOJ concedes that it had no such specific claim in mind when creating the Blue Book.) While DOJ insists that the "Supreme Court has never suggested" that it matters for work-product purposes "whether the contested document was prepared for a potential defendant or plaintiff" (DOJ Br. 39), *this Court has* where, as here, the party asserting work-product protection is the government. *Id.*

To be sure, work-product protection is available in both contexts, but the inquiry depends on "the factual situation in the particular case," *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987), including the capacity in which the government created the document. Unlike private litigants, government lawyers act in numerous capacities unrelated to any strategic effort to gain the upper hand in court. And when they act offensively, they are substantially more likely to be acting in a non-adversarial role *if* they have no particular claim in mind. Indeed, unlike private attorneys or government attorneys defending agency clients, prosecutors are often guided by their constitutional obligations to execute the law fairly, not to defeat their adversaries. It is only when they set their sights on a particular claim that they are likely to transition to an adversarial role.

7

In any event, even if *Schiller* and *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124 (D.C. Cir. 1987), set the relevant standard here, as DOJ argues, *Sealed Case* explained that the materials in those cases were created "to protect the client from future litigation about a particular transaction." 146 F.3d at 885. They were eligible for work-product protection because they were created in anticipation of legal challenges to *particularized conduct*. Specifically, *Delaney* concerned documents designed to advise the Government about potential litigation involving a specific program: the Internal Revenue Service's "new system of statistical sampling for auditing large accounts." *Id.* And *Schiller* involved documents created to help the Government defend against litigation arising from a specific kind of government conduct: its adoption in litigation with a private party of a (losing) position that is not "substantially justified." *Id.*; 28 U.S.C. § 2412(d)(1)(A). Meanwhile, the Blue Book discusses the broad subject of "discovery" *in general*. It was not created in connection with any particular conduct—neither a particular discovery practice nor a specific discovery dispute. It was created to govern DOJ's conduct in *all* discovery: in DOJ's own words, to "*comprehensively* cover[] the law, policy, and practice of prosecutors' disclosure obligations." JA 60, 67 (emphasis added). That is a level of generality higher than in either *Delaney* or *Schiller*. It cannot suffice under *Sealed Case* as a nexus to a "particular transaction"—or else that standard would be utterly meaningless.

In sum, the Blue Book lacks the requisite nexus to the adversary process and therefore is not protected as work product.  Indeed, if this discovery manual were work product despite the lack of connection to any particular claim, particular dispute, particular conduct, or particular transaction that is anticipated to generate litigation—simply because it "anticipates" litigation *in general*—then it is hard to imagine what document created by a litigating agency like DOJ would *not* be work product.  That virtually boundless privilege cannot be what Congress intended.

> **B.    In Analyzing The Blue Book's Contents And Function In Light Of FOIA's Purposes, DOJ Ignores Its Representations To Congress.**

Even if not dispositive, the absence of any connection between the Blue Book and any specific claim or dispute at a minimum puts a heavy burden on DOJ to show why the Blue Book nonetheless warrants protection under a doctrine that is designed to safeguard the adversary process.  It thus must distinguish between *adversarial* materials and *policy* materials.  Put another way, DOJ must show that the Blue Book was created "in anticipation of litigation"—not "literally," but "in the manner that the privilege requires."  *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 222 (D.D.C. 2012).

As NACDL has explained, that means looking to the Blue Book's function and its contents—in light of FOIA's purposes—to determine whether the Book implicates the purposes of work-product protection.  *See* NACDL Br. 17-22.  And each of those factors cuts decisively *against* such protection here.  *First*, DOJ is on

record as stating that it wrote the Blue Book "to ensure that prosecutors, agents, and paralegals have the necessary training and resources to fulfill their legal and ethical obligations with respect to discovery in criminal cases." JA 57. That is, the Blue Book is not about *winning cases*; it is about *protecting defendants' rights*. The latter is a critically important purpose, but not one that triggers the work-product doctrine. *See* NACDL Br. 28-30. *Second*, given that purpose, the Blue Book includes "comprehensive guidelines" about how to comply with disclosure duties (JA 90, 99) and conveys "agency policies regarding the government's discovery obligations" (JA 119). Such information does not invade the adversary process, and its disclosure would not threaten to interfere with litigators' strategic advice. *See* NACDL Br. 25-27. *Third*, looking to FOIA's basic objective—that agency policies and practices be transparent—should resolve any doubt over whether the Blue Book, which codifies DOJ's policy and practice respecting criminal discovery, can be kept secret. *Id.* at 30-32.

As to all three of these factors, DOJ responds not on the law but on the facts—accusing NACDL of "badly mischaracteriz[ing]" the Blue Book. DOJ Br. 44; *accord id*. at 23 ("NACDL has seriously misdescribed the Blue Book"). But DOJ ignores that NACDL was relying on *DOJ's own descriptions of the Book*, in its testimony to Congress on the question whether further legislation was needed to ensure DOJ's compliance with its duties of disclosure. It was *DOJ* that called the

Book a manual that "comprehensively covers the law, policy, and practice of prosecutors' disclosure obligations" (JA 60), one of a series of new "steps … to ensure that prosecutors ... fulfill their legal and ethical obligations with respect to discovery" (JA 57), as a result of which further legislation by Congress was "unnecessary" (JA 61). Yet now DOJ says that the Book is about *just the opposite*—not educating prosecutors about DOJ policy, but advising them on how best to "counter" defense requests for disclosure and "protect" themselves from discovery, *i.e.*, to help DOJ "ensure victory" in litigation. DOJ Br. 45-46.

NACDL assumes that DOJ's sworn testimony to Congress was accurate. And if so, the Blue Book's function is educational and defendant-protective, not "in anticipation of litigation" within the meaning of the work-product doctrine; that is, the Book tells prosecutors how to *act in litigation*, not how to *win in litigation*. *See Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 775-76 (D.C. Cir. 1978) (en banc) (materials setting forth "general standards to guide … Government lawyers" not work product). Similarly, taking DOJ at its (earlier) word, the Blue Book's content is neutral, objective, and policy-oriented, and thus again falls outside the scope of the work-product privilege. *See Am. Immigration Council*, 905 F. Supp. 2d at 222 (denying protection to material "convey[ing] routine agency policies" about how lawyers ought to act "in agency litigation" and to memo seeking "best interpretation" of regulation at issue); *Judicial Watch, Inc. v. U.S. Dep't of*

*Homeland Sec.*, 926 F. Supp. 2d 121, 142 (D.D.C. 2013) (denying protection to materials outlining "general standards to instruct ICE staff attorneys" in context of anticipated litigation). DOJ even admits as much in other parts of its brief. *See* DOJ Br. 54, 61 n.10 (representing that Blue Book's discussion of legal arguments available to DOJ is "candid"). Finally, to the extent that DOJ was fairly representing to Congress that the Blue Book is a compendium of "the law, policy, and practice of prosecutors' disclosure obligations" (JA 60), then it is classic agency working law: DOJ's effective law and policy respecting criminal discovery. Any doubt should therefore be resolved in favor of disclosing this material, "in which the public is so vitally interested and which Congress sought to prevent the agency from keeping secret." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 156 (1975).

To the extent that the Blue Book's content veers from its intended function, however, into strategic "tips" for *defeating* discovery requests—the material that DOJ exclusively underscores and highlights in its brief—that still does not warrant treating the Blue Book as work product. Evaluating a claim of work product is an "inherently fact-dependent" exercise that turns on the totality of the circumstances. *Senate of P.R.*, 823 F.2d at 587. And given all the reasons that work-product protection is inappropriate here, *see supra* at 4-12, the Book should not be deemed work product even if it contains *some* strategic content.

Moreover, DOJ is wrong to suggest that disclosure of the Blue Book would threaten the adversary process. The Book was created to increase compliance with constitutional and statutory disclosure obligations that are designed to ensure that the adversary process is *fair*. Far from undermining it, transparency of DOJ's discovery practices is a *prerequisite* to ensuring the integrity and impartiality of that adversary process. This is a subject that transcends the ordinary adversarial goal of prevailing in litigation.

### C.    DOJ Agrees That The Blue Book Must Be Segregated Unless It Is *All* Work Product, And Much Of Its Content Plainly Is Not.

Under FOIA, a document that includes some exempt information must still be produced in part: "Any reasonably segregable portion … shall be provided … after deletion of the portions which are exempt." 5 U.S.C. §552(b). This Court has repeatedly affirmed that "segregability" is the "law of the land," *Schiller*, 964 F.2d at 1209, as to "*all* exemptions in the FOIA," *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984) (emphasis added). At minimum, then, even if the Blue Book did contain *some* work product, remand is required so that the rest can be properly segregated and produced. *See* NACDL Br. 32-37.

DOJ does not dispute the general principle of segregation, and it admits that even if a document contains work product, the other, non-protected components of the document must be disclosed if not "so intertwined" with work product. DOJ Br. 48-49 (citing *United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010)).

13

Indeed, any contrary rule would offer agencies a foolproof way to shield *anything* from public view—simply add some true work product at the end and claim privilege over the entire document.  DOJ does not take that absurd view.

DOJ insists, however, that the Blue Book is *entirely* work product. Abandoning its earlier contention that the Book is work product because it contains some strategy and advice (which would not relieve DOJ of its obligation to produce the remainder), DOJ now articulates a simplistic, all-encompassing view of the doctrine: *Everything* created "by [DOJ] attorneys for the use of federal prosecutors in conducting litigation" is work product.  DOJ Br. 49-50.  Because the Book was written by lawyers and relates to litigation, in other words, DOJ claims that it is work product in its entirety and no part of it needs to be disclosed.

But that formulation would cloak in privilege virtually everything that DOJ creates.  Indeed, even if the Blue Book contained only objective, neutral policy guidelines, that would—under DOJ's novel "lawyer-wrote-it-for-use-in-litigation" test—allow it to be withheld.  Yet DOJ elsewhere *admits* that is not the law: "[DOJ] would have an affirmative obligation to make public any policy it adopts governing the disclosure obligations of federal prosecutors."  DOJ Br. 47.  And that was a wise concession, because this Court, too, has warned of the need to carefully delineate the work-product privilege so it does not "defeat[]" the

14

"policies of the FOIA." *Senate of P.R.*, 823 F.2d at 587; *accord Bristol-Meyers Co. v. FTC*, 598 F.2d 18, 29 (D.C. Cir. 1978).

In short, the notion that every chapter, line, and verse of the Blue Book is itself work product is neither credible nor consistent with the law that DOJ acknowledges. If *any* component of the Blue Book qualifies for protection, all remaining portions must be produced.

## III.    THE BLUE BOOK IS NOT PROTECTED BY EXEMPTION 7(E).

The Blue Book may not be withheld under Exemption 7(E) either. As an initial matter, the Book was not "compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but rather to regulate DOJ employees' conduct; DOJ's suggestion otherwise rests on a misinterpretation of both NACDL's position and the law. Moreover, disclosure of the Blue Book could not conceivably "risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Mistaking insistence for explanation, DOJ provides no logical account of why disclosing the Blue Book would present any risk whatsoever.

### A.    DOJ Cannot Deny That It Created The Blue Book To Regulate Its Prosecutors' On-The-Job Conduct, Not To Punish Wrongdoers.

Material is eligible for withholding under Exemption 7(E) only when it was compiled for "law enforcement purposes." 5 U.S.C. § 552(b)(7). Accordingly, in assessing the applicability of this exemption, this Court "scrutinize[s] with some skepticism the particular purpose" for which the material is created. *Pratt v.*

15

*Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982). The "critical" question, *Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 82-83 (D.C. Cir.), *supplemented*, 511 F.2d 1347 (D.C. Cir. 1974), is whether the material was created in order to prevent, investigate, or punish wrongdoing, *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014).

As NACDL has explained, however, DOJ created the Blue Book for the very different purpose of "*over[seeing]* the performance of duties by its employees." *Jefferson v. Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 177 (D.C. Cir. 2002) (emphasis added); *see* NACDL Br. 38-41. In other words, DOJ created the Book in its function as *manager* of employees who happen to engage in law enforcement activities, not "within its principal function of law enforcement." *Jefferson*, 284 F.3d at 177. Indeed, disclosures to the defense— while sometimes constitutionally or statutorily required—do not help to prevent, investigate, or punish wrongdoing. Quite the contrary: They may make it harder to obtain a conviction, a price society is willing to pay to ensure that the convictions it does obtain are fair and accurate. Because the Blue Book's true purpose is to ensure that DOJ employees abide by their disclosure obligations, it was created in DOJ's managerial function rather than its law enforcement function. *See id.* Exemption 7(E) is thus inapplicable.

16

DOJ insists, however, that it could not have created the Blue Book in its managerial function because the Book "does not establish *new* rules or policies that prosecutors have an obligation to follow in *all* investigations and prosecutions." DOJ Br. 57-58 (emphasis added). But it makes no difference whether the Book establishes new rules or simply reiterates old ones, and whether it applies to *all* investigations or only some. Surely an employer can engage in "oversight" of its employees, *Rural Housing*, 498 F.2d at 81, by repeating policies that govern some situations—repetition that was clearly warranted here, given what occurred in the Senator Stevens case. Ultimately, DOJ's "overarching purpose" in drafting the Book was to "prevent discovery violations and litigation arising from discovery transactions" (JA 119)—*i.e.*, "to insure that its employees are acting in accordance with statutory mandate and the agency's own regulations," *Rural Housing*, 498 F.3d at 81. At its core, that is a managerial function, not a law-enforcement one.

DOJ also argues that the Blue Book may be withheld under Exemption 7(E) because it "concern[s] discovery in criminal prosecution." DOJ Br. 57; *see also id.* at 51 (Blue Book should be shielded because it "advise[s]" prosecutors about their jobs and is "use[d]" by prosecutors). But this Court's precedents make clear that the applicability of Exemption 7(E) does not depend on whether a document touches in some way upon the topic of law enforcement. Indeed, when applied to law enforcement agencies, DOJ's rule would pull virtually everything they compile

17

within the potential reach of Exemption 7(E).  Such an expansive interpretation of Exemption 7(E) would plainly "swallow[] up the Act," "defeat[ing]" one of its "central purpose[s]."  *Rural Hous. Alliance*, 498 F.2d at 81; *see also Jefferson*, 284 F.3d at 177.  That cannot be right.  Rather, the court must look to the *purpose* of the document—which, as explained, here is managerial.

Finally, DOJ contends that NACDL's argument is flawed because the Blue Book need not be related to an *individual* violation of law to have been created for law enforcement purposes.  DOJ Br. 56-57 (citing *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002)).  DOJ fundamentally misunderstands NACDL's position.  The reason that the Blue Book was not created for law enforcement purposes has nothing to do with its generality or specificity.  It was not created for the purpose of investigating or prosecuting violations of law *at all*, whether in individual cases or in the aggregate.  Rather, because the Blue Book was created to regulate DOJ employees' discovery-related conduct and to prevent their future misconduct, Exemption 7(E) is categorically inapplicable at the threshold.

### B.    DOJ Fails To Explain How Disclosing The Blue Book Poses Any Risk Of Circumvention Of The Law.

Even if the Blue Book had been compiled for law enforcement purposes, Exemption 7(E) also compels DOJ to logically explain why disclosing it risks circumvention of the law.  *See* NACDL Br. 41-45.  DOJ concedes, for purposes of this appeal, that this second requirement applies.  *See* DOJ Br. 52 n.8.  But DOJ

utterly fails to show any rational connection between disclosure of the Blue Book and circumvention of the law.  Accordingly, the Book must be released.

Rather than simply explain what justifies its purported fears about releasing the Blue Book, DOJ argues that it need only clear a "relatively low bar" to show a risk of circumvention, and repeats the same standard NACDL cited and quoted in its brief—that DOJ must "demonstrate logically how the release of the requested information might create a risk of circumvention."  DOJ Br. 60; *see also* NACDL Br. 41.  But no matter how "low" the bar, DOJ fails to clear it.

DOJ first claims that, by teaching criminal defendants about "the procedures and techniques [it] uses to balance its disclosure obligations against its law enforcement interests," disclosure of the Blue Book would "increase the risk" that a criminal defendant could obtain "premature disclosure of Government witness information."  DOJ Br. 55; *see also id.* at 26, 60-61.  Although DOJ says the connection between the Blue Book and this risk is "obvious," it is anything but.  What DOJ appears to mean is that, armed with knowledge of the Blue Book's contents, a defendant would be better able to *convince a court* that disclosure of witness information is warranted *before DOJ would otherwise provide it*.  But, as NACDL has explained, that cannot be circumvention of law.  When a court orders disclosure of witness information, that order *is* the law.  NACDL Br. 43-44.  If a defendant uses that information to intimidate a witness, as DOJ hypothesizes, DOJ

Br. 55, that is undoubtedly illegal—but it hardly turns the disclosure of information to which the defense was *legally entitled* into *circumvention of the law*.

Apparently recognizing the limits of this argument, DOJ changes tactics. For the first time in this litigation, and without any support in the record, DOJ claims that the risks posed by disclosure of the Blue Book flow from marginal parts of the Book addressing discovery *from* defendants, not *to* defendants. DOJ Br. 54, 59-60. According to DOJ, "[k]nowing the government's own assessment of the strengths and weaknesses of its arguments for obtaining discovery *from* a defendant has an obvious and logical connection to an increased risk that a potential criminal defendant will be able to prevent the discovery of incriminating evidence." *Id.* at 60 (emphasis added); *see also id.* at 54, 59.

Far from "obvious," the connection is nonexistent. Unlike the materials in the cases that DOJ cites, the Blue Book does not describe how to *detect* crime; it discusses the scope and timing of disclosures during prosecution, *after* the crime has already been detected and charged. *Cf. Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007). It is thus difficult to fathom what anyone could possibly find in the Blue Book that would help them to "prevent" the detection of incriminating evidence.

To the extent that DOJ's point is that a defendant will "prevent" *discovery* from being disclosed to prosecutors by convincing a *court* that he need not produce

it, that contention suffers from the same flaw discussed above: A court order *constitutes* the law, not its circumvention.  If the court holds that the defense need not produce something in discovery, the defendant is not circumventing the law by not disclosing that information.  (It is also difficult to square DOJ's arguments regarding "obtaining discovery from a defendant" with the Fifth Amendment, which guarantees defendants the right *not* to disclose self-incriminating testimonial material, including where the act of production itself may be self-incriminating.  *See United States v. Hubbell*, 530 U.S. 27, 34-38 (2000).)

Alternatively, to the extent that DOJ's fear is that a defendant will "prevent" discovery of information by illegally hiding or destroying it (*see* JA 97), DOJ fails to provide any explanation for why knowing the government's "assessment of the vulnerabilities of its arguments concerning discovery" could conceivably make a defendant more likely to obstruct justice.  DOJ Br. 54.  If anything, knowing the "vulnerabilities" of the government's arguments to compel disclosure of certain material makes it *less likely* that any defendant would destroy it; if the government cannot obtain the material anyway, why risk an additional obstruction charge?

In short, DOJ's arguments on this score—even read generously to adopt reasoning that appears nowhere in DOJ's brief—cannot withstand scrutiny. Because making the Blue Book public poses no conceivable risk of circumvention of the law, Exemption 7(E) is inapplicable.

21

### C. This Court Should Not Credit DOJ's Conclusory Assertion That Segregation Would Be Impossible Here.

As NACDL has argued, and as DOJ has conceded, FOIA requires that all non-exempt, reasonably segregable material be disclosed. *See* NACDL Br. 48; DOJ Br. 61-62. And because the Blue Book contains—at a minimum—*some* non-exempt material, DOJ should not be permitted to withhold the manual in its entirety under Exemption 7(E). *See* JA 119 ("the Blue Book does contain general background information and agency policies regarding the government's discovery obligations"); *Cuneo v. Schlesinger*, 484 F.2d 1086, 1092 (D.C. Cir. 1973) ("[W]e cannot conceive of a situation in which legal interpretations and guidelines could not be segregated from other material and isolated in a form which could be disclosed."). Therefore, if portions of the Blue Book contain law-enforcement material that, if disclosed, would risk circumvention of the law, this Court should remand for the district court to make a segregability finding.

In resisting remand on this ground, DOJ admits that the Blue Book contains general policies about its disclosure obligations, and that those policies have previously been disclosed in other forms. DOJ Br. 61-62. DOJ concedes, as it must, that such material is not itself protected from disclosure under Exemption 7(E), *see id.* at 62—because it is both working law and already available to the public, *see* NACDL Br. 47-49. But it asserts that the material may nonetheless be withheld because it "cannot reasonably be segregated." DOJ Br. 62.

22

This Court should not credit DOJ's implausible, self-serving representation that *nothing* in the nine-chapter manual can safely be released.  DOJ should not be permitted to withhold the entire Blue Book without providing any real explanation as to why the unprotected portions cannot reasonably be segregated.  That is an inquiry for the district court to address on remand.

## CONCLUSION

This Court should reverse the judgment below and order the production of the Federal Criminal Discovery Blue Book.  At the very least, this Court should remand the case back to the district court for a segregability determination.

September 10, 2015                             /s/ Kerri L. Ruttenberg
                                              KERRI L. RUTTENBERG
                                               *Lead Counsel*
                                              YAAKOV M. ROTH
                                              JULIA FONG SHEKETOFF*
                                              JONES DAY
                                              51 Louisiana Ave. N.W.
                                              Washington, DC  20001
                                              (202) 879-3939
                                              *Counsel for Appellant*

                                              *Admitted in New York
                                              Supervised by member of D.C. bar

23

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 5,567 words, excluding the parts of the brief exempted by that Rule and D.C. Cir. R. 32(a)(1), as counted using the word-count function on Microsoft Word 2007 software.


September 10, 2015                      /s/ Julia Fong Sheketoff
                                       JULIA FONG SHEKETOFF
                                       JONES DAY
                                       51 Louisiana Ave. N.W.
                                       Washington, DC  20001
                                       (202) 879-3939
                                       jsheketoff@jonesday.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 10th day of September 2015, I electronically filed the original of the foregoing document with the clerk of this Court by using the CM/ECF system. I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system. Pursuant to this Court's order, I also caused eight copies of the foregoing document to be filed, by hand delivery, with the clerk of this Court.

September 10, 2015

/s/ Julia Fong Sheketoff
JULIA FONG SHEKETOFF
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
(202) 879-3939
jsheketoff@jonesday.com